LANDRY, Judge.
Willie J. Brooks, Sr. (Appellant) appeals dismissal of his action for a writ of mandamus compelling Dr. Gerald L. Foret, Coroner, Washington Parish (Appellee), to change Appellee’s official designation of the cause of death of Appellant’s sixteen year old son, James Brooks, from “suicide” to “accidental death”. We affirm.
On the night of August 25, 1973, Appellant’s son was found dead of a gunshot (shotgun) wound to the right temple. Upon investigation by Dr. Foret and Deputies of the Washington Parish Sheriff’s Office, Appellee issued and filed the Certificate of Death required by LSA-R.S. 33:1561, which provides in pertinent part, as follows:
“It shall be the duty of the coroner either to view the body or to make an investigation in all cases of suspicious, unexpected, unusual deaths, sudden deaths, violent deaths,
******
The coroner must furnish a death certificate based on his examination, investigation or autopsy, and he must state as best he can the cause and means of death, and if it appears that death be due to accident, suicide, or homicide, he shall so state.
******
The cause of death, the manner or mode in which the death occurred, as rendered by the coroner and incorporated in the death certificate filed with the Bureau of Vital Statistics of the Board of Health shall be the legally accepted manner and mode by which the deceased came to his or her death and shall be the legally accepted cause of death; unless the court of the parish in which the death occurred, after a hearing, directs the coroner to change his decision as to the cause, mode, or manner of death.”
Paragraph 17A of the certificate lists the cause of death as “gunshot wound right temple — self inflicted”, and paragraph 19A thereof recites the mode or manner of death was “suicide”.
Pursuant to the above statute, Appellant proceeded by rule to seek the desired change in the death certificate.
There were no witnesses to the death which occurred at the home of John W. Knight, decedent’s brother-in-law, at approximately 10:00 P.M. of the date mentioned. Decedent stopped in for a social call and was invited to participate in a barbecue supper in progress on the porch of the Knight residence. After eating, the assembled group engaged in general conversation for a time. During the discussion, decedent went into the house without comment. Very shortly thereafter, a gunshot was heard from within. Decedent was found in a bedroom, lying on the floor between the bed and a nearby wall. A 12 gauge, single shot, hammer type shotgun with a 32 inch barrel, which inflicted the fatal wound, was found lying on the bed. The gun belonged to Knight. Knight testified he kept the gun loaded; that the ammunition in the gun was Knight’s; and that decedent, who was interested in purchasing the weapon, had bought a box of shells in anticipation of acquiring the gun.
No question of insurance coverage is involved herein or contingent upon the outcome of this case. Appellant concedes he is simply trying to remove the stigma of suicide as the official cause of his son’s death.
*544 Appellee, Chief Criminal Deputy Sheriff Vertrees Adams, and Deputy Sheriff Dewey Norsworthy viewed decedent’s body and the scene of the incident approximately one hour after the fatal event. Each expressed a familiarity with shotguns and had experience in handling and firing weapons of this nature. Dr. Foret spoke with decedent’s mother who had arrived at the Knight home. Deputy Adams, spoke to the members of the Knight family.
Examination of the body disclosed that the entrance wound was on the right temple. Based on the size of the entrance wound, which was about the size of the gun barrel, and heavy powder burns noted on the perimeter of the wound, Dr. Foret and the Deputies concluded the gun barrel was in contact with decedent’s temple when the shot was fired. The direction of the force was observed to be upward. The charge exited through the top of decedent’s head, totally destroying decedent’s cranium. Dr. Foret testified that one of the Deputies experimented with the weapon and found that it could be held against the temple and the trigger pulled. There was no evidence of the hammer having been cocked accidentally by engaging some object or becoming entangled in the bedcov-ering on which the gun was found. Deputy Adams’ inspection of the weapon disclosed it had a firm trigger pull and a safety device which would prevent firing if the gun went off only half-cocked.
■ Appellant’s proof consisted principally of evidence showing a lack of suicidal motive or intent. The testimony of decedent’s parents, friends and acquaintances show that decedent was a well adjusted, normal lad of sixteen years. He was a better than average student. On the day of his death, decedent had purchased a mini-bike which he intended to repair. Decedent had also acquired a part time job that same day. In addition, decedent had purchased clothes and school supplies in anticipation of school opening. So far as known, decedent was not dejected or despondent; he was not known to have been disappointed in love; he was deemed a happy youth, and he had a savings account.
Mr. Knight testified the gun could have fired because it had an “easy trigger”. He also noted that because of the barrel length and weight of the gun, the weapon could not be held with the barrel end next to one’s temple and thus discharged, because the trigger could not be reached.
Appellant urges that a death certificate issued pursuant to the applicable statute is of no probative value in establishing cause of death; that suicide is never presumed, and that the trial court erred in failing to place upon the Coroner the burden of establishing that the death was in fact suicide.
The reasons for judgment entered of record by the trial court indicate that he properly declined to attach any probative value to the death certificate in reaching his conclusions herein.
We are not here concerned with an insurer seeking to avoid payment of a life policy predicated upon a defense of excluded suicide. In such cases, the Coroner’s findings establish the fact of death only; suicide is never presumed, and the insurer bears the burden of establishing suicide to the exclusion of every other reasonable hypothesis. Faulk v. Mutual Life Ins. Co., 160 La. 529, 107 So. 395.
In the instant case, the Coroner does not allege or contend death was by suicide. He merely complied with the express terms of Section 1561, above, which requires that he record his opinion as to the cause of death after investigation, examination and autopsy, if an autopsy is performed. In this case, no autopsy was performed.
 We hold that in cases of this nature, the Coroner is not required to prove suicide as an absolute fact. He is only required to record the opinion he reaches based on his examination and investigation. *545 Once this has been done with statutory-compliance (which we find here), the statute imposes upon the party seeking change the burden of establishing the error of the Coroner’s conclusion.
 As noted by the trial judge, the Coroner is required to state a cause of death which shall be legally accepted as such until a court, after a hearing, orders otherwise. We likewise agree with the trial court that the Coroner’s judgment should not be disturbed where there is evidence to support his expressed opinion. We add that the party seeking a change must produce evidence to convince the Court of the error of the Coroner’s designation of the cause of death.
We find ample physical evidence to support the Coroner’s declared opinion in this instance. Appellant’s evidence showing a lack of suicidal motive or tendency does not refute the physical evidence relied upon by the Coroner. Under the circumstances, the Coroner’s report must stand.
The judgment is affirmed at Appellant’s cost.
Affirmed.