JOSEPH GEORGUSIS      *      NO. 2024-CA-0243

VERSUS      *

     COURT OF APPEAL

FRANK MINYARD, M.D., IN      *
HIS CAPACITY AS CORONER      FOURTH CIRCUIT
FOR THE PARISH OF      *
ORLEANS, STATE OF      STATE OF LOUISIANA
LOUISIANA      * * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2011-12493, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**Judge Joy Cossich Lobrano**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Sandra Cabrina Jenkins, Judge Nakisha Ervin-Knott)


Joseph R. Ward, Jr.
WARD & CONDREY, LLC
438 S. New Hampshire St.
Covington, LA 70433

Frank G. DeSalvo
829 Baronne Street
New Orleans, LA 70133

     COUNSEL FOR PLAINTIFF/APPELLANT


C. William Bradley, Jr.
L. David Adams
Lance V. Licciardi, Jr.
BRADLEY MURCHISON KELLY & SHEA, LLC
1100 Poydras Street, Suite 2700
New Orleans, LA 70163

     COUNSEL FOR DEFENDANT/APPELLEE


**REVERSED AND REMANDED**

**NOVEMBER 20, 2024**

*JCL*

*SCJ*

*NEK*

Plaintiff/Appellant, Joseph Georgusis ("Plaintiff"), seeks review of the district court's January 12, 2024 judgment, which granted the Motion for Summary Judgment filed by Defendant/Appellee, Dr. Dwight L. McKenna ("Defendant"), and dismissed Plaintiff's claims with prejudice. For the reasons that follow, we reverse the summary judgment and remand.

## FACTS AND PROCEDURAL HISTORY

This is an action to compel the Orleans Parish Coroner's Office ("Coroner's Office") to change the official designation of the cause of death of Plaintiff's twenty-three year old son, Joseph J. Georgusis ("Decedent"). Decedent passed away on August 5, 2005. An autopsy was conducted by the Coroner's Office on the following day. Thereafter, Dr. Frank Minyard ("Dr. Minyard"), then Orleans Parish Coroner, issued an autopsy protocol, which classified the death as "ACCIDENT - Drug Related."

Plaintiff conducted his own investigation into the cause of the death. In February 2011, at Plaintiff's request, Decedent's body was exhumed, and an autopsy was conducted by Dr. Cyril Wecht ("Dr. Wecht"), a forensic pathologist. In his June 17, 2011 report, Dr. Wecht concluded that "it is not possible to arrive at

1

an opinion with reasonable medical and scientific certainty what the cause of death . . . was" and "[a]ccordingly, it is not possible to determine what the manner of death was." Further, he concluded that "[t]he toxicological analyses . . . do not reveal drugs of sufficient quantity to be forensically and unequivocally acceptable as a cause of death."

On November 30, 2011, Plaintiff filed suit against Dr. Minyard in his capacity as Coroner of Orleans Parish, alleging that the Coroner's Office failed to properly investigate Decedent's death and requesting that the Coroner's Office be ordered to reclassify the death from "ACCIDENT - Drug Related" to some other cause. Plaintiff further requested an order compelling the Coroner's Office to provide him access to the complete coroner's file, including photographs taken at the time of the autopsy, and sought an award for damages for emotional distress and mental anguish.

In response to the Petition, Dr. Minyard filed exceptions of no cause of action and prescription, arguing that there is no cause of action against a coroner for the breach of his statutory duties because "the duty statutorily imposed upon the coroner is for the benefit of the sovereign, and not the private individual or the individual's private interest" and that, in any event, Plaintiff's action was prescribed by the one-year liberative prescription period applicable to delictual actions set forth in La. C.C. art. 3492. Plaintiff filed a memorandum in opposition to the exceptions of no cause of action and prescription.

In ruling on the exceptions filed by Dr. Minyard, the district court categorized Plaintiff's claims into two different types, namely, negligence claims for damages and non-negligence claims, consisting of Plaintiff's demand that the Coroner's Office reclassify Decedent's death and his demand that he be given

2

access to the entire coroner's file, including all photographs. Further, the district court determined that Plaintiff's non-negligence claims were personal in nature and were therefore subject to a liberative prescription of ten years under La. C.C. art. 3492. By written judgment issued on March 27, 2012, the district court sustained the exception of prescription as to the negligence claims; dismissed the negligence claims with prejudice; and denied the exception of no cause of action and the exception of prescription as to the non-negligence claims.

On July 13, 2015, the Coroner's Office amended Decedent's death certificate to state that the manner of death "could not be determined" and that the immediate cause of death was "undetermined."

On June 14, 2019, Plaintiff filed a First Supplemental and Amending Petition to add Defendant in his capacity as Coroner for the Parish of Orleans. Plaintiff filed a Second Supplemental and Amending Petition on July 28, 2020, alleging that evidence obtained through discovery revealed that the cause of Decedent's death was homicide and requesting that the Coroner's Office be ordered to change the official cause of death to homicide.

On August 28, 2023, Defendant filed a motion for summary judgment, along with a memorandum in support of his motion for summary judgment. Plaintiff filed a motion for summary judgment on September 18, 2023. On the same date, Plaintiff also filed a memorandum in support of his motion for summary judgment and in opposition to Defendant's motion for summary judgment. Defendant filed a memorandum in opposition to Plaintiff's motion for summary judgment and reply memorandum in support of Defendant's motion for summary judgment on October 12, 2023. The parties' motions for summary judgment were heard by the district court on January 12, 2024. By judgment rendered on January 12, 2024, the district

3

court denied Plaintiff's motion for summary judgment and granted Defendant's motion for summary judgment, dismissing the action with prejudice. This appeal timely follows.

**ASSIGNMENT OF ERROR**

As his only assignment of error, Plaintiff asserts that the district court erred in granting summary judgment in favor of Defendant.

**LAW AND DISCUSSION**

Appellate courts review the grant or denial of a motion for summary judgment *de novo,* using the same criteria applied by trial courts to determine whether summary judgment is appropriate. *Jones v. Boot Bar & Grill*, 22-0154, p. 12 (La. App. 4 Cir. 10/5/22), 350 So.3d 968, 978, *writ denied*, 22-01639 (La. 1/18/23), 353 So.3d 728. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It is "favored and shall be construed to accomplish these ends." *Id.* A court must grant a motion for summary judgment "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

"In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor." *Hines v. Garrett*, 04-0806, p. 1 (La. 6/25/04), 876 So.2d 764, 765. A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery,

4

affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Jones*, 22-0154, p. 14, 350 So.3d at 979. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Id.*

On motion for summary judgment, the burden of proof remains with the movant. La. C.C.P. art. 966(D)(1). However, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id.* Thereafter, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id.* "The adverse party may not rely on mere allegations or denials to defeat a motion for summary judgment but must provide specific facts showing that a genuine issue remains for trial, and failure to do so will result in the rendering of the summary judgment." *Jones*, 22-0154, p. 13, 350 So.3d at 979 (citing La. C.C.P. art. 967(B)). " '[I]f the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact' and summary judgment is appropriate." *Id.* (quoting *Knox v. Elite Prot. Sols. & Willie's Chicken Shack, LLC*, 21-0419, pp. 9-10 (La. App. 4 Cir. 10/13/21), 366 So.3d 341, 349).

Plaintiff brought this suit against the coroner for, *inter alia*, reclassification of the cause of Decedent's death. Louisiana Revised Statutes 13:5713(E)[1] provides, in pertinent part, as follows:

> (1) The coroner shall furnish a death certificate based on his examination, investigation, or autopsy, and he shall state as best he can the cause and manner of death.
> * * *
> (3) The cause of death, and the manner or mode in which the death occurred, as incorporated in the death certificate as provided in the Vital Statistics Laws, R.S. 40:32 et seq., filed with the division of vital records of the Louisiana Department of Health, shall be the legally accepted cause of death, unless the court of the parish in which the death occurred, after a hearing, directs otherwise.

In *Wyatt v. Williams*, the Second Circuit held:

> [La.] R.S. 33:1563(E) [now La. R.S. 13:5713(E)] requires that the coroner state a cause of death. The coroner's designation is the legally accepted cause of death unless a court directs the coroner to change the cause of death on the death certificate. The party seeking to change the cause of death has the burden of proof.

28,092, p. 3 (La. App. 2 Cir. 2/28/96), 669 So.2d 1380, 1381-82 (citing *Brooks v. Foret*, 314 So.2d 542, 545 (La. App. 1st Cir. 1975)). *See also Bailey v. State of Louisiana*, 623 So.2d 704, 706 (La. App. 4th Cir. 1993) (noting that "[o]nce the coroner has recorded his opinion, the burden then shifts to a party challenging his findings to produce evidence that the coroner erred.").

In support of his motion for summary judgment, Defendant submitted, *inter alia*, the autopsy protocol, the June 17, 2011 report of Dr. Wecht, the correction to the death certificate made on July 13, 2015, and the deposition of Dr. Samantha

---

[1] The law governing a coroner's duties with respect to investigations and autopsies was previously set forth in La. R.S. 33:1563. La. R.S. 33:1563 was redesignated in 2011 as La. R.S. 13:5713.

Huber ("Dr. Huber"), the pathologist who performed the autopsy. The autopsy protocol classified the death as "ACCIDENT - Drug Related." In his report, Dr. Wecht concluded that "it is not possible to arrive at an opinion with reasonable medical and scientific certainty what the cause of death . . . was" and "[a]ccordingly, it is not possible to determine what the manner of death was." Further, Dr. Wecht concluded that "[t]he toxicological analyses . . . do not reveal drugs of sufficient quantity to be forensically and unequivocally acceptable as a cause of death." The correction to the death certificate changed the death certificate to read: "manner of death: could not be determined; immediate cause: undetermined." In her deposition, taken on October 10, 2014, Dr. Huber stated that there was insufficient evidence to support the conclusion that Decedent's death was caused by homicide.

In opposing the motion for summary judgment, Plaintiff submitted, *inter alia*, the deposition of Decedent's former roommate, Jerone Carrasquillo ("Roommate"), the deposition of Decedent's former girlfriend, Jennifer Miller[2] ("Girlfriend"), and the sworn statement of Detective Charles Loescher ("Detective Loescher") of the New Orleans Police Department.[3]

In his sworn statement, Detective Loescher stated that he interviewed Roommate at Plaintiff's home on November 22, 2006. According to Detective Loescher, Roommate stated that after he came home from work on August 5, 2005 around 4:00 a.m., he and Decedent started snorting cocaine. After they ran out of cocaine, Decedent called Vernon Cook ("Cook") to bring more cocaine. Cook and

---

[2] At the time her deposition was taken on June 25, 2012, Girlfriend's name was Jennifer Miller Autin.

[3] We note that the sworn statement of Detective Loescher was taken in compliance with the procedures governing depositions set forth in La. C.C.P. art. 1421 *et seq.*

another man arrived at the house around 8:00 a.m., and Decedent and the two men went into Decedent's bedroom. Roommate subsequently heard "some commotion" in Decedent's bedroom "as though [] a drug deal was going bad," and then "observed [the two men] suffocating [Decedent]." Roommate further stated that when the two men exited the bedroom, they told him and Girlfriend that if they told anyone about the encounter, the men would "come back and get them." Detective Loescher testified that he returned to Plaintiff's home approximately a week later to interview Girlfriend and that her statement matched the statement Roommate had given.

In his deposition, Roommate testified that he came home from work on August 5, 2005 at around 4:00 or 4:30 a.m. and that after he and Decedent did some cocaine together, he went to sleep. He stated that after Girlfriend returned from work around lunchtime, she alerted him that Decedent was not breathing. Roommate stated that he ran into Decedent's bedroom, rolled Decedent over, observed that Decedent was not warm and was purple around the mouth and eyes, and attempted to perform CPR.

Roommate acknowledged in his deposition that when he was questioned at Plaintiff's home, he told the police that Decedent had been murdered but stated that this statement was not true and that he had been pressured to say that Decedent was murdered. Roommate explained that at the time of questioning, he was on probation and was threatened that he would be arrested and his probation revoked given his admission that he and Decedent did drugs together. Roommate stated that he was aware of Plaintiff's theory of murder as the cause of Decedent's death, having previously been questioned by Plaintiff's private investigators, and that the

officer would not let him leave "until [Roommate] told him what he wanted to hear."

At Girlfriend's deposition, Girlfriend invoked her Fifth Amendment privilege to remain silent and refused to answer any questions relating to Decedent's death.

We find that there remain genuine issues of material fact as to the cause of Decedent's death. A hearing under La. R.S. 13:5713(E) cannot result in summary judgment if there are disputed issues of material fact, especially when the outcome depends on assessing the weight and credibility of conflicting evidence. Summary judgment in this case is improper because there are determinations that require a full evidentiary hearing where witnesses can be examined and cross-examined. Accordingly, we find that the district court erred in granting Defendant's motion for summary judgment and dismissing the action.

## CONCLUSION

For the foregoing reasons, we reverse the portion of the district court's January 12, 2024 judgment that granted summary judgment in favor of Defendant and dismissed the action with prejudice, and we remand this matter to the district court with instructions to proceed with a hearing in accordance with La. R.S. 13:5713(E) and make a finding as to whether or not there is sufficient evidence to warrant a change of the official classification of Decedent's death.

**REVERSED AND REMANDED**

.